## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

R. JOHN HARPER, individually, and )
d/b/a/ DARBY MOUNTAIN )
OUTFITTERS, a Wyoming partnership, )
           )
     Plaintiff, )
           )
     vs. )        Case No. 01-CV-201-J
           )
GULF INSURANCE COMPANY, a )
Missouri corporation, )
           )
     Defendant. )

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

     The above-entitled matter has come before the Court on the parties' cross-motions for summary judgment; plaintiff appearing by and through his attorney Alan Mortensen, and the defendant appearing by and through its attorney Patrick Murphy; and the Court having heard the arguments of counsel in support of and in opposition to said motions and having fully and carefully reviewed and considered the motions and briefs filed therewith, and being fully advised, finds that the defendant's motion should be GRANTED and that plaintiff's motion for summary judgment should be DENIED for the reasons stated below.

## BACKGROUND

     Plaintiff, John Harper, ("Harper") is an outfitter in Big Piney, Wyoming. At all times relevant to this matter, Harper operated, as partners with Chuck Thornton

("Thornton"), an outfitting business called Darby Mountain Outfitters ("DMO").

Beginning in May 1996, DMO purchased a commercial general liability ("CGL") policy[1]

through Gulf Insurance Company ("Gulf") with liability limits of $500,000 per occurrence,

and $1,000,000 aggregate.[2]  The policy has been renewed annually.  Both Harper and

Thornton are insureds under the policy.

        In 1995, Brett Chappell ("Chappell") worked at a Sam's Club in Salt Lake City,

Utah.  Thornton went to Sam's to purchase supplies for DMO.  While in Salt Lake City,

Thornton met and talked to Chappell about working as a wrangler for DMO.  Thornton

also met with Chappell's mother, Mrs. Ericksen ("Ericksen"), to discuss the possibility of

Chappell working for DMO.  During that meeting, Ericksen explained that Chappell was

a special needs young man with learning disabilities, he was clinically hyperactive, he

had attention deficit disorder, he suffered from hearing loss, and he was borderline

mentally retarded with an IQ of approximately 70.  Thornton acknowledged these

problems and promised Ericksen that he would look after Chappell, take care of him,

and teach him what he need to know to work for DMO.  Chappell went to work for DMO

on April 1, 1995 and worked until November 1995.  He went back to work for DMO on

---

        [1] Sometimes known as a comprehensive general liability policy, a "CGL" is an insurance policy usually "obtained by a business, that covers damages that the insured becomes legally obligated to pay to a third party because of bodily injury or property damage."  *Gainsco Ins. Co. v. Amoco Prod. Co.*, 53 P.3d 1051, 1057 (Wyo. 2002) (citing BLACK'S LAW DICTIONARY 809 (7th ed. 1999)).

        [2] Prior to May 1996, DMO was covered by another insurer.

2

March 3, 1996 and worked until November 1996.  He returned to work in February 1997 and was employed until August 15, 1997.

In July 1998, Drew Perkins ("Perkins") mailed a letter to Harper and Thornton advising them that he represented Ericksen and Chappell and informing them that Chappell was alleging that Thornton initiated a three-year homosexual relationship with Chappell.  Perkins informed Harper that he intended to file suit against him for negligence.  He also stated that the plaintiff was interested in settling before filing the claim for $85,000.  Neither Harper nor Thornton notified their insurance company or responded to the letter.  On August 13, 1998, Chappell filed two suits: (1) one against Thornton for committing continual acts of unwanted sexual contact with Chappell, battery, and intentional infliction of emotional distress; and (2) one against Harper for negligent failure to warn Chappell's parents of Thornton's sexual predatory nature.[3]

When Harper was served with the complaint, he took the complaint, summons, and letter to his insurance agent, Brian Sawyer who then faxed the materials to Gulf.  Buddy Stuart, the Claims Supervisor at Gulf Insurance in Dallas, Texas, assigned the claim to Benson Ford.  On September 3, 1998 Ford issued a denial of coverage letter to Harper stating that Gulf "will be unable to provide a defense or indemnification in the lawsuit filed in this matter" because the Intended Injury Exclusion, the Employer's

---

[3] Around 1990, Thornton pled guilty to charges of taking indecent liberties with a minor male.  It is undisputed that Harper knew about this conviction.

3

Liability Exclusion, and the Abuse or Molestation Exclusion precluded coverage for Harper. *See* Denial Letter.

Harper hired his own counsel to defend the lawsuit. He alleges that due to mounting legal bills that he could no longer afford coupled with the concern that a substantial judgment would be entered against him at trial, Harper entered into a stipulation not to execute. The stipulation provided that "Chappells . . . will not execute on the judgment against the assets of Harper, other than any rights or proceeds of insurance coverage and Chappells shall pursue recovery of the Judgment solely from Gulf." Essentially, Harper agreed he would not appear and defend at trial.

A bench trial was held on February 12, 2001 before Judge Terry Rogers in the Ninth Judicial District. Perkins made an opening statement, and Ericksen, Chappell, and Chappell's father testified. Perkins made a closing argument and then submitted a proposed findings of fact and conclusions of law to the trial court. On February 16, 2001, the Court issued a judgment of liability and damages in the amount of $1,516,000. Harper then filed this suit against Gulf.

John Harper, individually, and doing business as Darby Mountain Outfitters, initiated the instant action in order to recover for damages Mr. Harper allegedly suffered from Gulf's failure to defend and indemnify him in a lawsuit alleging a negligent failure to warn an employee's parents of his partner's sexual predator history. Harper claims that the defendant is liable under the theories of (1) breach of contract; (2) breach of

4

the covenant of good faith and fair dealing; (3) breach of various tort duties and state insurance statutes and regulations; and (4) negligent misrepresentation.

Parties filed cross-motions for summary judgment.  Plaintiff moved for partial summary judgment on two issues: (1) whether Gulf provided CGL coverage to plaintiff for the underlying tort claims; and (2) whether Gulf Insurance had a duty to defend plaintiff in the underlying tort suit.  The defendant also moves for summary judgment under each of the following independent legal theories: (1) plaintiff's failure to provide Gulf with the contractually mandated notice of the settlement offer made by Chappell's attorney, Drew Perkins; (2) Thornton's sexual molestation of Chappell was not an "accident" and was not an "occurrence" under the policy so there was no applicable coverage; (3) the claims alleging negligent hiring and retention against Harper do not satisfy the "occurrence" requirement for coverage even though the policy contained a severability-of-insureds clause because Harper's liability was related to and interdependent on Thornton's tortious conduct; (4) the Abuse or Molestation Exclusion contained in Gulf's policy is clear and unambiguous and it precludes any coverage for either Harper or Thornton; (5) the "employee" exclusion contained in Gulf's policy precludes coverage for any "bodily injury" to an "employee" of DMO, and since Chappell was an employee who was injured by the sexual abuse the policy excludes any coverage for Chappell's injuries; (6) the doctrine of reasonable expectations does not apply because Harper never read his Gulf policies so his subjective belief or

expectation as to coverage is of no consequence; (7) summary judgment should be granted on the bad faith claim because Gulf had a "fairly debatable" basis for denying coverage to Harper as set forth in the September 3, 1998 letter to Harper; (8) there is no evidence that Gulf misrepresented anything to Harper; and (9) there is no evidence to support a claim of punitive damages against Gulf.

## STANDARD OF REVIEW

Pursuant to Federal Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits on file, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing the absence of a genuine issue concerning any material fact. *See generally Adickes v. S.H. Kress and Co.*, 398 U.S. 144 (1970). The moving party's burden is satisfied when the moving party demonstrates the absence of a genuine issue of material fact. *See generally Celotex Corp. v. Catrett*, 477 U.S. 317 (1968). Once the moving party has met its initial burden, the burden shifts to the party resisting the motion. The party resisting the motion must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Manders v. Oklahoma ex rel. Dep't of Mental Health*, 875 F.2d 263, 265 (10th Cir. 1989) (*citing Celotex*, 477 U.S. at 322). In determining whether these burdens have been met, the court is required to examine all

6

evidence in the light most favorable to the non-moving party. *See Barber v. General Electric Co.* 648 F.2d 1272, 1276 n.1 (10th Cir. 1981).

## DISCUSSION

This case requires the Court to delineate the coverage limits of a CGL policy issued by Gulf Insurance to John Harper and DMO. Analytically, before one asks whether a policy exclusion removes otherwise applicable coverage, one must determine whether there is applicable coverage in the first instance. *Gearing v. Nationwide Ins. Co.*, 665 N.E.2d 1115, 1117-18 (Ohio 1996). Wyoming's established rules of contract interpretation apply to insurance policies. *Gainsco Ins. Co. v. Amoco Prod. Co.*, 53 P.3d at 1056 (Wyo. 2002) (citing *Doctors' Co. v. Ins. Corp. of Am.*, 864 P.2d 1018, 1023-24 (Wyo. 1993). Interpretation is the process of ascertaining the meaning of the words used to express the intent of the parties. *Id.* The intent of the parties is determined by considering the instrument which memorializes the agreement of the parties as a whole. *Id.* The Wyoming Courts utilize a standard of interpretation for insurance policies which declares that the words used are given the plain meaning that a reasonable person, in the position of the insured, understands them to mean. *Id.* If the language is unambiguous, our examination is confined to the "four corners" of an integrated contract and extrinsic evidence is not admitted to contradict the plain meaning. *Id.* The language of an insurance policy is ambiguous if it is capable of more

than one reasonable interpretation.  *Id.*  Because insurance policies represent contracts

of adhesion where the insured has little or no bargaining power to vary the terms, if the

language is ambiguous, the policy is strictly construed against the insurer.  *Id.*

However, the language will not be "tortured" to create an ambiguity.  *Id.*

**I. Coverage Under The Policy**

     In order to determine if the allegations fall within the scope of the policy, the

Court must determine if the allegations constitute an "occurrence."

     **Occurrence[4]**

     The gulf policy limits its CGL coverage to "occurrences."  *See* Def.'s Exh. D,

Commercial General Liability Coverage Form ("Policy") at 1.  The policy defines

"occurrence" as being "an accident."  Policy at 12.  Although the word "accident" is not

defined in the Gulf policy, the Wyoming Supreme Court has interpreted the word

"accident" not to include conduct that is intentional or purposeful.  *First Wyo. Bank v.*

---

[4] The CGL policy provides that Gulf:
"will pay those sums that the insured becomes legally obligated to pay as damages
because of 'bodily injury' or 'property damage' to which this insurance applies.  We will
have the right and duty to defend the insured against any 'suit' seeking those damages.
However, we will have no duty to defend the insured against any 'suit' seeking damages
for 'bodily injury' or 'property damage' to which this insurance does not apply.   Def.'s
Exh. D, Commercial General Liability Coverage Form ("Policy") at 1.
The policy further provides that "[t]his insurance applies to 'bodily injury' . . . only if: (1)
The 'bodily injury' . . . is caused by an 'occurrence' that takes place in the coverage
territory . . . ."  Policy at 12.  The policy defines "occurrence" as "an accident, including
continuous or repeated exposure to substantially the same general harmful condition."
Policy at 12.

*Cont'l Ins.*, 860 P.2d 1094, 1100 (Wyo. 1993). Recently, a unanimous Wyoming Supreme Court restated its long-standing definition of "accident":

> The word may be defined as meaning a fortuitous circumstance, event, or happening, an event happening without any human agency, or if happening wholly or partly through human agency, an event which under the circumstances is unusual and unexpected by the person to whom it happens; an unusual, fortuitous, unexpected, unforeseen, or unlooked for event, happening or occurrence; . . .chance or contingency; fortune; mishap; some sudden and unexpected event taking place without expectation, upon the instant, rather than something which continues, progresses or develops . . .

*Matlack v. Mountain W. Farm Bureau Mut.*, 44 P.3d 73, 77 (Wyo. 2002).

Most courts infer an intent to injure as a matter of law from acts of abuse or molestation. It is nearly universally held that sexual misconduct is not accidental and thus, not an "occurrence." *See Allstate Ins. Co. v. Steele*, 74 F.3d 878, 880 (8th Cir. 1996); *Kim v. Nat'l Indem. Co.*, 6 P.3d 264, 267 (Alaska 2000); *Northland Ins. Co. v. Briones*, 81 Cal. App. 4th 796, 807 (2000); *State Farm Fire and Cas. Co. v. Brooks*, 43 F. Supp. 2d 695, 699-701 (Tex. 1998).

However, the Gulf policy also contains a separation-of-insureds clause that provides:

> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
> a. As if each Named Insured were the only Named Insured; and
> b. Separately to each insured against whom claim is made or "suit" is brought.

Policy at 10.

A separation-of-insureds clause changes the inquiry into whether there is an occurrence under the policy. Wyoming cases that have addressed the definition of "occurrence" have not done so in the context of a separation-of-insureds clause. *See Matlack*, 44 P.3d at 73. There is a split in authority among other jurisdictions as to the effect of a separation of insureds clause on the definition of "occurrence." Several cases have addressed the effect of "occurrence" in conjunction with a separation-of-insureds clause and have found that an "occurrence" happened with regard to the negligence of a co-insured, even if another co-insured committed an intentional act. *Silverball Amusement, Inc. v. Utah Home Fire Ins. Co.*, 842 F. Supp. 1151, 1157-58 (W.D. Ark.) ("[I]f an injury occurs without the agency of the insured, it may be logically termed 'accidental,' even though it may be brought about designedly by another person. . . . The test of whether an injury is a result of an accident is to be determined from the viewpoint of the insured and not from the viewpoint of the one that committed the act causing the injury.").[5]

----

[5] *See also Am. Employers Ins. Co. v. Doe 3B*, 165 F.3d 1209 (8th Cir. 1999) (holding that a separation-of-insureds clause requires the insurance company to treat a legitimate claim of negligence against a co-insured as an "occurrence" despite the intentional acts of a co-insured); *United Fire & Cas. Co. v. Shelley Funeral Home, Inc.*, 642 N.W.2d 648 (Iowa 2002) ("[W]hen viewed from the funeral home's perspective, the Schenkes' injuries were not intended or expected but fit the definition of 'occurrence' found in the United Fire policy."); *Agoado Realty Corp. v. United Int'l Ins. Co.*, 733 N.E.2d 213, 215 (N.Y. 2000) (ruling that negligence constitutes an occurrence under a CGL policy, even where an underlying murder occurred); *Doe v. Shaffer*, 738 N.E.2d 1243 (Ohio 2000) (ruling that an employer's alleged negligent acts do constitute an occurrence and can be covered as a matter of public policy under CGL policies); *King v.*

The defendant urges the Court to adopt the theory that a negligence claim that is "related to and interdependent" on an intentional act of another is not an "occurrence." *See Am. States Ins. Co. v. Bailey*, 133 F.3d 363 (5th Cir. 1998) (finding that the negligence claims against four associate ministers were "related to and interdependent" on the pastor's sexual actions which were not "occurrences" under the policy). Gulf argues that the negligence claim against Harper is "purely derivative" from the Thornton's intentional acts, and coverage for such acts cannot be bootstrapped merely by asserted claims termed as "negligence" against the non-perpetrator. All of Chappell's causes of action rely upon the same facts, Thornton's sexual acts and molestation. Gulf argues that because the facts alleged, those regarding Thornton's sexual abuse do not constitute an "occurrence" within the meaning of the policy, there is no coverage and no duty to defend for Harper.

This Court finds that the defendant's argument is not persuasive for two reasons. First, it is undisputed that under Wyoming law, the purpose of a separation-of-insureds or severability clause is to provide each insured with separate coverage, distinct and apart from any obligation the insurer may owe to other insureds, that is, unaffected by the coverage for other insureds. *See, e.g., Barnette v. Hartfort Ins. Group*, 653 P.2d

_____

*Dallas Fire Ins. Co.*, 85 S.W.3d 185, 191-192 (Tex. 2002) ("[W]hether one who contributes to an injury is negligent is an inquiry independent from whether another who directly causes the injury acted intentionally. Essentially the actor's intent is not imputed to the insured in determining whether there was an occurrence.").

1375, 1380 (Wyo. 1982). If the Court does not apply the separation-of-insureds clause to find that an occurrence occurred, it is unclear what purpose the separation-of-insureds clause serves. Defendant has offered no explanation of the purpose for the clause if not applied in this situation. Second, the majority of the cases that the defendant cites in support of its proposition are either inapplicable or have been rejected by more recent decisions.[6] The Court will view the case from the insured's perspective. Harper was sued for negligent failure to warn; there is no allegation that he intended for the sexual abuse of Chappell to occur. Viewing the allegations from his perspective, the injuries suffered by Chappell were accidental, thus constituting an "occurrence" under the policy. Such an allegation triggers coverage.[7]

## II. Exclusions

---

[6] Gulf cited seven Texas cases in support of its claim that Harper's negligence does not constitute an "occurrence" because it is interdependent upon Thornton's intentional acts. However, in August, 2002, the Texas Supreme Court issued an opinion on a very similar issue rejecting the previous case law. *See King*, 85 S.W.3d at 191-192 ("[T]he Fifth Circuit's rule (the same one that Gulf relies on in this case) improperly imputes the actor's intent to the insured. That is to say, whether one who contributes to an injury is negligent is an inquiry independent from whether another who directly causes the injury acted intentionally. Essentially, the actor's intent is not imputed to the insured in determining whether there was an occurrence."). Gulf's reliance on *Allstate Ins. Co. v. Steele*, 74 F.3d at 878 (8th Cir. 1996) is misplaced because the policy in *Steele* had a "joint obligations" clause which provided that the "responsibilities, acts and failures to act of a person defined as an insured person will be binding upon another [insured]."

[7] Since the Court has ruled that the allegations constitute an "occurrence" under the policy, the Court will not address plaintiff's arguments that the defendant should be estopped from asserting this argument or that the defendant waived this argument.

Next, the Court must determine whether coverage is precluded by any applicable exceptions contained in the policy.  The parties dispute whether the Abuse or Molestation Exception, the Intended Injury Exclusion, the Employee Exclusion, or the Cooperation Clause applies to these allegations.

**Abuse or Molestation**[8]

In this case, it is contested by both parties whether either paragraph 1 or paragraph 2 of this exclusion applies to preclude coverage for Harper.

**A.  Paragraph 1: Actual Abuse or Molestation**

---

[8] The Abuse or Molestation Exclusion provides in full:
THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
**ABUSE OR MOLESTATION EXCLUSION**
This endorsement modifies insurance provided under the following:
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
The following exclusion is added to Paragraph 2., Exclusions of COVERAGE A-BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section 1 - Coverages) and paragraph 2., Exclusions of COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY (Section 1 - Coverages):

This insurance does not apply to "bodily injury", "property damage", "advertising injury" or "personal injury" arising out of:
    1.  The actual or threatened abuse or molestation by anyone of any person while in the care, custody, or control of any insured, or
    2.  The negligent:
        a. Employment;
        b. Investigation;
        c. Supervision;
        d. Reporting to the proper authorities, or failure to so report; or
        e. Retention;
        of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraph 1 above.

13

Paragraph 1 provides: "This insurance does not apply to "bodily injury", "property damage", "advertising injury" or "personal injury" arising out of:

1.  The actual or threatened abuse or molestation by anyone of any person while in the care, custody, or control of any insured . . . "

The Abuse or Molestation Exclusion is an endorsement in each of the seven policies issued by Gulf to Harper.  This exclusion tells Mr. Harper: "THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY." An endorsement is a writing added to or attached to a policy which expands or restricts its benefits or excludes certain conditions from coverage.  COUCH ON INSURANCE 3d § 18:16, at 18-24 (1997).  It is part of the contract to the same extent as if it were actually embodied therein.  *Id.*  The policy and the endorsement are to be read together to determine the contract actually intended by the parties.  *Id.*  Where provisions in the body of the policy conflict with an endorsement, the provision of the endorsement governs.  *Cap. Indem. Corp. v. Especially for Children, Inc.*, 2002 WL 31002849 at *8 (D. Minn. Aug. 29, 2002).

The Abuse or Molestation Exclusion in the Gulf policy was first promulgated by the Insurance Service Office, Inc. ("ISO") in 1987.  Several CGL commentators have described the intent of the ISO clause as to deny all coverage for abuse or molestation

incidents.[9]  Although the Wyoming Courts have not interpreted an Abuse or Molestation

Exclusion, all courts that have interpreted the ISO exclusion have found it to be clear

and unambiguous.  *See, e.g., Cmty. Action for Greater Middlesex County v. Am.*

*Alliance Ins. Co.*, 757 A.2d 1074, 1082-83 (Conn. 2000).  This ISO Exclusion "serves to

exclude from coverage all classifications of damages arising out of incidents of

---

[9] The International Risk Management Institute ("IRMI") publishes a multi-volume
insurance reporter series entitled Commercial Liability Insurance.  It provides:
### Abuse or Molestation Exclusion
Abuse and molestation, as intentional acts, do not come within the CGL
coverage of bodily injury arising out of an "occurrence," with respect to an insured who
actually commits the abuse or molestation.  Organizations that have care or custody of
others- schools, hospitals, nursing homes, day care centers, etc.- are likely to be held
vicariously liable for abuse committed by their employees; the CGL intentional acts
exclusion would not interfere with coverage for an insured's vicarious liability in such
circumstances.
This endorsement eliminates coverage for an insured organization's liability in
connection with abuse or molestation committed by someone other than that insured.  It
applies to abuse and molestation incidents against "any person while in the care,
custody, and control of any insured" committed by "anyone."  That "anyone" could be
the insured's employee, agent, independent contractor, customer, client, or a person
completely unconnected with the insured organization.
This exclusion goes on to remove coverage for other related claims that are sometimes
brought against an organization as alternative grounds of action when an incident of
abuse or molestation has occurred.  These related allegations are sometimes made to
avoid arguments over whether the acts of abuse or molestation were an occurrence
("accident"), and thus to suggest a separate occurrence with respect to the employer
(the negligent act of employment or supervision).  For example, the insured
organization could be sued for inadequate screening of job applicants that allowed a
person with a history of abusive behavior to have charge of children or nursing home
residents.  Such claims would be different from purely vicarious liability claims since
they allege actual negligence on the part of the insured organization.  Such claims are
addressed in the second part of the exclusion.  That part applies to negligent
"employment, investigation, supervision, or retention" of persons who commit abuse or
molestation and for whose conduct the insured "is or ever was legally responsible."

molestation." *Lincoln County v. Doe*, 749 So.2d 943, 946 (Miss. 1999).

With regard to paragraph 1, plaintiff seeks to have this Court declare that some ambiguity is created by virtue of the existence of a general separation-of-insureds clause in the policy. Plaintiff argues that due to the severability clause, the term "any insured" in the sexual molestation exclusion refers only to the person seeking coverage, in this instance, Harper. Thus, when determining Harper's coverage, Thornton is not "any insured" and the policy does not exclude coverage for Harper for Thornton's acts. Furthermore, plaintiff argues that the claims against Harper were alleged to have "arisen out of" Harper's negligence, not sexual molestation; thus, the exclusion for injuries "arising out of sexual molestation" does not affect Harper's coverage. He then argues that the Abuse or Molestation Exclusion should somehow yield, or give way, to the separation-of-insureds clause, and the Court should not consider or give effect to the Abuse or Molestation Exclusion.

In support of this argument, plaintiff cites approximately ten cases in which the courts found coverage and/or a duty to defend a negligent insured where the policy contains a separation-of-insureds provision and the intentional acts exclusion precludes coverage to "an" insured or "any" insured.[10] The thrust of these minority cases is that

---

[10] *W. Am. Ins. Co. v. AV&S*, 145 F.3d 1224 (10th Cir. 1998); *Allstate Ins. Co. v. Worthington*, 46 F.3d 1005 (10th Cir. 1995); *Silverball Amusement, Inc. v. Utah Home Fire Ins. Co.*, 842 F. Supp. 1151 (W.D. Ark. 1992); *Premier Ins. Co. v. Adams*, 632 So.2d 1054 (Fla. App. 1994); *United Fire & Cas. Co. v. Shelly Funeral Home, Inc.*, 642 N.W.2d 648 (Iowa 2002); *Litz v. State Farm Fire & Cas. Co.*, 695 A.2d 566 (Md. 1997);

the severability clause creates an ambiguity, thus the employer's negligent acts

constitute an "occurrence".[11]   In most of the cases cited by plaintiff, the courts ruled

that the separation-of-insureds clause created an ambiguity, thus paving the way for the

courts to strictly construe the policy against the insurer.

      However, this Court finds that the plaintiff's argument is not persuasive for two

reasons.  First, the only known Wyoming decision on this issue does not comport with

plaintiff's reasoning.  *See USAA v. Griswold*, Civil No. 22262, Sixth Judicial District

(Feb. 2, 2002 Order Granting Summary Judgment and Declaratory Relief) (Attached).

The Court ruled that an allegedly negligent wife was not entitled to any coverage, or a

defense, from her homeowner's insurer where her husband was convicted of sexually

molesting two foster children in their home and she was sued for negligently failing to

prevent the abuse.  *Id.*  The homeowner's policy contained both an intentional acts

exclusion which precluded coverage for the intentional or purposeful act of "any

insured" and a severability-of-interests clause.  *Id.*  The Court rejected the arguments

advocated by the co-insured wife (the same arguments advocated by plaintiff in the

instant case) and ruled that the words "any insured" are unambiguous.  *Id.*  "No

---

*Worchester Mut. Ins. Co. v. Marnell*, 496 N.E.2d 158 (Mass. 1986); *Am. Nat'l Fire Ins. Co. v. Fournelle*, 472 N.W.2d 292 (Minn. 1991); *King v. Dallas Fir Ins. Co.*, 85 S.W.3d 185, 191-192 (Tex. 2002).

    [11] Significantly, none of the cases cited by plaintiff involves a molestation exclusion.

reasonable insured could expect that he or she had contracted to be covered for damage an insured causes when another insured molests a child." *Id.* Therefore, since a Wyoming Court has rejected the argument that the words "any insured" coupled with a severability-of-interests clause creates an ambiguity, this Court will do the same.

Second, this case presents a clearer exclusion than the intended act exclusion at issue in the cases cited by the plaintiff. No court that has interpreted this exclusion has found it ambiguous.[12] The Gulf policy provided a comprehensive endorsement which tells the employer there is no coverage for any damages resulting from the sexual abuse or molestation performed by "any insured." The intentional design of the ISO Abuse or Molestation Exclusion is that any perceived ambiguity between the "intentional acts" exclusion and the separation-of-insureds clause is obviated. It is worded to tell the insured employer that he has no coverage where, as here, his employee abuses or molests anyone who is in any insured's care, custody, and control.

It is this Court's view that severability clauses do not negate, or limit the effect of plainly worded policy exclusions. In Wyoming, "general terms and conditions of a

_____

[12] *McAuliffe v. Norther Ins. Co. of N.Y.*, 69 F.3d 277 (8th Cir. 1995); *Cap. Ind. Corp. v. Especially for Children, Inc.*, 2002 WL 31002849 (D. Minn. 2002);*Children's Aid Soc'y of Montgomery County v. Great Am. Ins. Co.*, 1995 WL 251374 (E.D.Pa. 1995); *Cmty. Action for Greater Middlesex County, Inc. v. Am. Alliance Ins. Co.*, 757 A.2d 1074 (Conn. 2000); *Lincoln County Sch. Dist. v. Doe*, 749 So. 2d 943 (Miss. 1999); *Town Bus. Corp. v. Ins. Co. of the St. of Penn.*, 744 N.Y.S. 394 (2002); *Caroff v. Farmers Ins. Co. of Washington*, 989 P.2d 1233, 1234 (Wash. App. 1999) ("We hold that the specific, all-inclusive [molestation] exclusion bars coverage here and is neither negated nor rendered ambiguous by the general severability clause").

contract yield to specific ones, if not reconcilable." *Flora Constr. Co. v. Bridger Valley Elec. Ass'n, Inc.*, 355 P.2d 884, 886 (Wyo. 1990). Severability clauses merely announce in general language that the policy applies separately to each insured. *Caroff*, 989 P.2d at 1236-37. They do not override the explicit provisions in the molestation exclusion or make that exclusion ambiguous. *Id.* at 1236-37 ("[T]he severability clauses merely announce in general language that the policies apply separately to each insured. As such, they do not override the explicit provisions in the child molestation exclusions or make those exclusions ambiguous.").[13]

---

[13] Most courts refuse to find that a severability of interests clause somehow trumps an unambiguous molestation exclusion. *See, e.g., McAuliffe v. Northern Ins. Co. of N.Y.*, 69 F.3d 277 (8th Cir. 1995) (finding that sexual molestation exclusion unambiguously excluded negligence claims against the bishop where a priest molested a female parishioner); *Allstate Ins. Co v. Kim*, 121 F. Supp. 1301, 1309 (D. Hawaii 2000) ("To hold otherwise would effectively nullify exclusions from coverage in any case involving co-insureds and a policy with a severability provision. It is inconceivable that parties to a policy would include clauses specifically excluding coverage for claims based on certain kinds of conduct, but intend those exclusions to have no effect in any case involving claims against coinsured spouses."); *IPCI Limited v. Old Republic Ins. Co.*, 758 F. Supp. 478, 481 (E.D.Wis. 1991) ("[T]he broad language of both sexual abuse endorsements unambiguously exclude coverage for a claim arising out of sexual abuse"); *Slavens v. American Fire & Cas. Co.*, 2001 WL 69463 at *3 (Minn. App. Jan. 30, 2001) ("[H]ere, the sexual molestation exclusion is not negated by the severability clause because the exclusion bars coverage if someone who qualifies as 'an insured' under the policy committed the acts of sexual molestation. Accordingly, the exclusionary provision, read in conjunction with the severability clause, bars coverage in this case [for the co-insureds]"); *Lincoln County v. Doe*, 749 So.2d 943, 946 (Miss. 1999) (finding no coverage for school principal on allegation that he negligently failed to warn students of the offender's violent sexual past and noting that "the sexual molestation exclusion serves to exclude from coverage all classifications of damages arising out of incidents of molestation"); *Am. Family Mut. Ins. v. Moore*, 912 S.W.2d 531

This Court finds that no ambiguity exists between paragraph 1 of the Abuse or Molestation Exclusion and the separation-of-insureds clause.  The exclusion precludes coverage for bodily injury caused by "the actual . . . abuse or molestation by anyone of any person while in the care, custody, or control of any insured."  The presence of a separation-of-insureds clause does not change the fact that the Abuse or Molestation Clause employs the words "any insured."  There is no doubt that Chuck Thornton is an insured.  These words are unambiguous; no reasonable insurer could expect that he had contracted to be covered for damage an insured causes when another insured molests someone.  The presence of the severability of interests clause in the Gulf policy does not alter the exclusion, nor does it make it ambiguous.  The exclusion precludes coverage for the innocent co-insured, Harper because Chappell suffered "bodily injury" arising out of the actual abuse while in the care, custody, or control of an insured, Thornton.

---

(Mo. App. 1995) (finding that a severability clause does not negate an unambiguous policy exclusion); *Town Bus. Corp. v. Ins. Co. of the St. of Penn.*, 744 N.Y.S. 394 (2002) ("The CGL policy contains unambiguous exclusions for claims arising out of abuse or molestation committed by plaintiff's employees, and plaintiff's negligent employment, investigation and supervision of abusers . . . where no cause of action would exist but for the molestation, the claim is based on molestation and the exclusion applies"); *Northwest G.F. Mut. Ins. Co. v. Norgard*, 518 N.W.2d 179, 183 (N.D. 1994) ("As between the two clauses, the sexual molestation exclusion is a particularly tailed provision that excludes any coverage for specific actions of specific individuals, whereas the severability clause is a more general provision concerned with who is covered. . . . A provision such as the exclusion dealing specifically with sexual molestation of children prevails over more general severability clause. . . . The purpose is not to negate bargained-for exclusions which are plainly worded.").

Since paragraph 1 of the Abuse or Molestation Exclusion applies to exclude coverage to Harper on the negligent failure to warn claim, Gulf did not have a duty to defend or indemnify Harper.  Therefore, the breach of contract claim fails as a matter of law.

**B.  Paragraph 2: Negligence of Employer**

Paragraph 2 of the exclusion provides: This insurance does not apply to "bodily injury", "property damage", "advertising injury" or "personal injury" arising out of: . . .

2.  The negligent:
>   a. Employment;
>   b. Investigation;
>   c. Supervision;
>   d. Reporting to the proper authorities, or failure to so report; or
>   e. Retention;
>   of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraph 1 above.

Def.'s Exh. D.

In Wyoming, a contract includes not only what it states expressly, but also that which of necessity is implied from its language.  *Engle v. First Nat'l Bank of Chugwater*, 590 P.2d 826, 831 (Wyo. 1979).  Parties who contract on subject matter concerning which known usages prevail incorporate into their agreement such implications if nothing is said to the contrary.  *Id.*  Experience teaches insureds and insurers that "failure to warn" claims are frequently asserted with "failure to protect" and "failure to prevent" sexual abuse claims.  *See, e.g., Enumclaw v. Wilcox*, 843 P.2d 154 (Wyo. 1992) (suing wife for "negligently" failing to report the abuse, provide adequate safety,

and for failing to warn where husband molested numerous day care children);

*Napieralski v. Unity Church of Greater Portland*, 802 A.2d 391 (Me. 2002) (alleging

"negligent supervision" against church after she was sexually assaulted by pastor and,

as part of that "negligent supervision" claim, she asserted that the church did not "warn

or otherwise protect her"); *Metro. Prop. & Cas. Ins. Co and Affiliates v. Miller*, 589

N.W.2d 297, 300 (Minn. 1999) (suing wife for her "alleged failure to warn of or prevent

abuse" where husband molested minor child).

     Plaintiff argues that the plain wording of the exclusion does not preclude

coverage for the claim against Harper for his negligent failure to warn. Paragraph 2

excludes coverage for negligent employment, negligent investigation, negligent

supervision, negligent reporting or failure to report, and negligent retention claims. A

claim for negligent failure to warn is not a specifically listed exclusion under paragraph

2. According to plaintiff, at a bare minimum, the exclusion is ambiguous and should be

interpreted to provide coverage for the claim of negligent failure to warn. *See*

*Commercial Union Ins. Co. v. Stamper*, 732 P.2d 534, 539 (Wyo. 1987) ("[I]f the

contract is fairly susceptible of two constructions, the one favorable to the insured will

be adopted.").

     The defendant counters that the Abuse or Molestation Exclusion in this policy

specifically addresses and precludes coverage for all claims of negligence by an

employer. When Chappell sued Harper for negligence in the underlying suit, he alleged

as follows:

> 12. Defendant Harper knew or should have known that Defendant Thornton had sexual predatory tendencies and that Defendant Thornton had exhibited them in the past against other young men who had worked for Darby Mountain Outfitters.
> 13. The knowledge created a duty to Defendant Harper to warn and/or to supervise the conduct by Defendant Thornton to prevent the forseeable risk to Brett from Defendant Thornton's predatory acts.

(Compl. ¶ 12, 13).

Whether alleged as a "failure to warn" or a "failure to protect" or a "failure to prevent" sexual abuse, all such "claims" are subsumed within an employer's general duty of care to an employee. *See Centennial Ins. Co. v. Bailey*, 2000 WL 1515158 (Tex. App. October 12, 2000). An employer's warning, supervision, and prevention are merely the ways he complies with his legal duty to "take reasonable precautions to protect" persons from his employees' sexual abuse. *Id.* Stated differently, where Gulf's Abuse or Molestation Exclusion expressly excludes coverage for Harper's "negligent employment" of any molester, it necessarily and impliedly excludes coverage for any "failure to warn," "failure to protect," and "failure to prevent" claims or theories. Defendant argues that it is illogical to conclude that Gulf intended to exclude coverage for Harper's negligent employment, negligent investigation, negligent supervision, negligent reporting, and negligent retention, but somehow intended to include coverage for Harper's negligent failure to warn. It defies common sense to adopt such a proposition. Gulf implemented a comprehensive exclusion that clearly excluded all

types of negligent conduct regarding claims of abuse or molestation.

The Court finds the defendant's arguments persuasive. The Abuse or Molestation Exclusion is drafted to exclude all coverage for sexual abuse, regardless of whether that abuse was caused intentionally (by the molester/employee) or negligently (by his employer). The exclusion clarifies that no coverage is provided to employers for their negligence relating to any abuse or molestation. An employer's "duty to warn" is subsumed and implied within his "employment," "investigation," "supervision," and "retention" of a molesting employee. And where, as here, Harper negligently "fails to warn" Chappell's parents of Thornton, Harper has negligently employed, negligently supervised, and negligently retained Thornton. It is impossible for Gulf to anticipate every claim that creative counsel will craft in order to draft a complaint that will trigger coverage. Moreover, it defies common sense that Gulf intended to exclude all negligence of an employer regarding sexual abuse, except for the negligent failure to warn. Here, the abuse or molestation clause makes it crystal clear that no coverage is provided to employers for their negligence relating to any abuse or molestation.

This Court concludes that paragraph 2 also applies to preclude coverage to Harper. While it is often said that the duty to defend is broader than the duty to indemnify, where there is clearly no applicable coverage for the underlying allegations, there is no duty to defend those allegations. *See First Wyo. Bank* v. *Cont'l Ins. Co.*, 860 P.2d 1064 (Wyo. 1993) (finding no coverage and no duty to defend); *Reisig v.*

*Union Ins. Co.*, 870 P.2d 1066 (Wyo. 1994) (finding no coverage and no duty to defend).  As a matter of law, Gulf had no duty to defend or indemnify Harper for any of the allegations in Chappell's lawsuit.  Thus, summary judgment is appropriate regarding the breach of contract claim.

## II. Bad Faith

A bad faith claim requires an entirely separate analysis than the contractual claim regarding coverage.  "Under Wyoming law, a bad faith claim is an independent tort action based on the theory that insurers owe a duty of good faith to policyholders not to unreasonably deny a claim for benefits under the policy."  *Marathon Ashland Pipe Line LLC v. Maryland Cas. Co.*, 243 F.3d 1232, 1246 (10th Cir. 2001).  Before discussing Harper's individual claims, it may be helpful first to review the separate concepts of first-party bad faith and third-party bad faith:

> The duty of good faith and fair dealing which is implied by law to inhere in every insurance policy runs from the insurer to the insured. . . .  Breach of this duty may give rise to a cause of action for "third party" bad faith or for "first party" bad faith.  A cause of action for "third party" bad faith will lie when a liability insurer fails in bad faith to settle a third-party claim within policy limits against its insured . . . . Bad faith in this context would occur if an excess judgment were obtained under circumstances when the insurer failed 'to exercise intelligence, good faith, and honest and conscientious fidelity to the common interest of the [insured] as well as of the [insurer] and [to] give at least equal consideration to the interest of the insured.' . . . A cause of action for "first party" bad faith will lie when an insurer in bad faith refuses to pay its insured's direct claim for policy benefits . . . . Bad faith in this context would occur if an insurer knowingly or recklessly denied a first party claim for insurance benefits without having a reasonable basis for doing so.

*Gainsco Ins. Co. v. Amoco Prod. Co.*, 53 P.3d 1051, 1058 (Wyo. 2002) (quoting *Herrig v. Herrig*, 844 P.2d 487, 490 (Wyo. 1992)).

### A. Third-Party Bad Faith

"Wyoming has recognized as a basic premise that no third-party bad faith cause of action for failure to settle will accrue against an insurer until entry of judgment against the insured in excess of policy limits." *Gainsco*, 53 P.3d at 1059. To begin with, third-party bad faith occurs, if at all, when the offer of settlement is rejected. *Id.* at 1062. The central element of a tort of third-party bad faith is the objectively unreasonable rejection of a settlement offer within policy limits. *Id.* However, this rule presumes that the insured had a duty to defend or indemnify. Stated differently, in order for the insured to have a duty to accept reasonable offers within the policy limits, it must have had a duty to defend or chose to defend under a reservation of rights. The parties have pointed to no legal authority and this Court has not found any legal authority in which a Court allowed a third-party bad faith claim to stand when the court determined that there was no coverage, and thus, no duty to defend. It is this Court's view that Harper may not assert that Gulf unreasonably rejected a settlement offer within the policy limits because, as a matter of law, Gulf did not have a duty to provide a defense. Summary judgment for the defendant is appropriate regarding the third-party bad faith claim.

### B. First-Party Bad Faith

To prove a claim for bad faith, "a plaintiff must demonstrate (1) the absence of a

26

reasonable basis for denying benefits of the policy and (2) the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Matlack*, 44 P.3d at 73. Under an objective standard, the question is whether the validity of the claim is fairly debatable. *Gainsco*, 53 P.3d at 1062. Such validity is fairly debatable if a reasonable insurer would have denied benefits under the existing circumstances. *Id.*[14]

Recently, the Wyoming Supreme Court has formulated an additional test for a first party bad faith claim. The definition of this tort has been expanded to include a second kind of bad faith described at "oppressive or intimidating claims practices." *Hatch v. State Farm Fire and Cas. Co.*, 842 P.2d 1089, 1099 (Wyo. 1992). Even if a claim for benefits is fairly debatable, the insurer may breach the duty of good faith and fair dealing by the manner in which it investigates, handles or denies a claim. *Id.*; *see also Gainsco*, 53 P.3d at 1062 ("Also implicated is the question of whether the facts necessary to evaluate the claim are properly investigated and developed or recklessly ignored and disregarded.").

Plaintiff asserts that the bad faith claim is appropriate because its expert, Randy Johnson "has opined that Gulf's bad faith conduct rises to the level of reckless disregard of Harper's rights." According to plaintiff, the claim was denied without one

---

[14] "The logical premise of the debatable . . . standard is that if a realistic question of liability does exist, the insurance carrier is entitled to reasonably pursue that debate without exposure to a claim of violation of its duty of good faith and fair dealing." *Gainsco Ins. Co. v. Amoco Prod. Co.*, 53 P.3d 1051, 1062 (Wyo. 2002).

phone call, without one witness interview, without the reading of one single case, without substantive review by Ford's supervisors, without the benefit of Wyoming counsel, without inquiring about the impact of the separation of insureds clause, without inquiring about the definition of "temporary worker" in Wyoming, by an adjuster who has never adjusted in Wyoming, who was not licensed in Wyoming, who was overworked "with too many files on his desk." Defendant counters that where the insurer correctly determines that it had no applicable coverage or duty to defend, summary judgment is always granted to the insurer on the insured's bad faith claim. *See, e.g.*, *Matlack*, 44 P.3d at 77; First Wyo. Bank., 860 P.2d at 1094.

As this Court has discussed, the Wyoming Supreme Court has identified two ways by which an insurer can violate the duty of good faith and fair dealing: by "unreasonable denial" of a claim by an insurer where that claim is not "fairly debatable" and by employment of "oppressive or intimidating claims practices" in handling of the insured's claim. The facts upon which Harper relies to prove bad faith are not compelling.

### 1. Fairly Debatable

In the instant case, the precise issue is if it was fairly debatable whether the Abuse or Molestation Exclusion in the insurance policy meant that Gulf did not have to provide coverage for Brett Chappell's injuries due to Chuck Thornton's abuse and molestation under a theory of negligent failure to warn by Harper. Defendants

28

argument that as a matter of law when the Court finds no coverage, the Court must grant summary judgment does not comport with the law. *Hatch*, 842 P.2d at 1099. The Court must engage in a separate inquiry. *Id.*

The Wyoming Supreme Court has yet to address this issue. Nationwide, however, there appear to be a few cases that have interpreted this provision. *See* Part II. None of the courts found the clause to be ambiguous. *See* Part II. Almost universally, courts have denied coverage according to the Abuse or Molestation Exclusion. *See* Part II. This Court determined that undoubtedly, the language of the exclusion, on its face, applies to the allegations in the instant case, the negligent failure to warn. *See* Part II. Once the Court determines that there was no coverage as a matter of law, it is illogical to then say that a reasonable insurer would not have denied coverage. Given the clear language contained in the policy, the lack of authority in the jurisdiction, and the disparity of authority nationwide on this question, this Court concludes that the claim was fairly debatable. *See Gainsco*, 53 P.3d at 1063 ("It is not necessarily an act of bad faith for an insurer to deny or delay payment of benefits where the underlying incident objectively may be seen as being covered by a policy exclusion, particularly where there is no controlling authority within the jurisdiction.").

### 2. Oppressive Claims Practices

The denial of coverage does not prevent Harper from prevailing on the bad faith claim. *See Hatch*, 842 P.2d at 1099 (holding that even if the insurer can prove its

denial of the claim was legitimate because the claim was fairly debatable, the insured

may still prevail on its bad faith claim if he can demonstrate that the insurer's

investigation, handling and denial of the claim violated the implied covenant of good

faith).  In *Hatch*, the Wyoming Supreme Court listed several examples of "oppressive or

intimidating claims practices."  *Id.* at 1097-99.  These included delay of payment, an

insurer's failure to respond to an insured's request for clarification of its rights under the

policy, and conduct which forces insured to litigate.  *Id.*[15]  Plaintiff's expert, Randy

Johnson "has opined that Gulf's bad faith conduct rises to the level of reckless

disregard of Harper's rights."  According to Johnson, the fact that the claim was denied

---

[15] Commentators have discussed the factors required for a bad faith claim.
Glenn E. Smith, JD, cites examples of conduct and tactics for which first-party insurers
have been held liable: Inadequately investigating a claim; delaying payment of a first
party claim; forcing an insured to litigate or seek arbitration of a claim, knowing that it
has no substantial grounds to reject the claim; engaging in trickery or deception;
deliberately misinterpreting records or policy provisions for the purpose of defeating
coverage; using threats of dire consequences to force the insured to agree to an unfair
settlement; falsely accusing its insured of arson in defending a casualty claim; exploiting
the insured's vulnerable financial position following a loss covered by the policy; making
oppressive demands or imposing burdensome requirements not contained in the policy;
conditioning payment of the undisputed portion of the claim on the settlement of the
disputed portion of the claim; abusing the arbitration process; retaliating against the
insured for filing a claim by canceling his policy; abusing the insured's subrogation
rights; and unfairly imposing a premium increase simply because the insured filed a
claim; an abuse of the insurer's right of subrogation; spoliation of evidence; an insurer's
failure to respond to an insured's request for clarification of the latter's rights under the
policy; postclaim underwriting failure to inform the insured of remedial rights.
Smith, *Understanding the New Tort of First Party Bad Faith in Wyoming:  McCullough v.
Golden Rule Insurance Company,* XXVI LAND & WATER L.REV. 225, 244-68 (1991).

without one phone call, without one witness interview, without the reading of one single case, without substantive review by Ford's supervisors, without the benefit of Wyoming counsel, without inquiring about the impact of the separation of insureds clause, without inquiring about the definition of "temporary worker" in Wyoming, by an adjuster who has never adjusted in Wyoming, who was not licensed in Wyoming, who was overworked "with too many files on his desk," constitutes bad faith.  However, Johnson has not affirmatively described the industry standard or custom for adjusting a claim, especially one regarding a clear and unambiguous Abuse or Molestation Exclusion.  He merely cursorily and summarily states that Gulf did not meet the standard.

     The Court concludes that there is nothing in the record to suggest that defendant deliberately misrepresented policy provisions to defeat coverage; made oppressive demands or imposed burdensome requirements not contained in the policy; retaliated against the insureds in any way; unfairly imposed premium increases; forced plaintiffs to arbitrate or litigate, knowing that it had no substantial grounds to reject the claim; required Plaintiffs to continue premium payments while it reviewed their claim; or undertook any other action for which insurers have been held liable in first-party bad faith claims.  *See Ahrenholtz v. Time Ins. Co.*, 968 P.2d 946, 951 (Wyo.1998) (citing *Hatch,* 842 P.2d at 1097). The remaining facts which allegedly show bad faith are the lack of investigation and Gulf's prompt response to the request for a defense, apparently indicating to plaintiff only a cursory examination of the case.  Gulf complied

with Wyoming law that requires insurers to either accept or reject an insured's claim within 45 days of receipt. Plaintiff has provided no authority that requires an insurer to take any more action that Gulf did when investigating and handling a claim; Gulf was faced with an unambiguous exclusion and facts that clearly fit within that exclusion. Reasonable minds could not differ as to whether, on the basis of these facts, Gulf acted improperly in the investigation and handling of the claim. Taking all the evidence in this matter in a light most favorable to plaintiff, the Court concludes there is no material issue of fact with respect to plaintiff's bad faith claim, and that defendant is entitled to summary judgment as a matter of law.

### III. Negligent Misrepresentation

The elements of a negligent misrepresentation claim are: (1) false information supplied in the course of one's business for the guidance of others in their business; (2) failure to exercise reasonable care in relating the information; and (3) pecuniary loss resulting from justifiable reliance thereon. *Verschoor v. Mountain W. Farm Bureau Mut. Ins. Co.*, 907 F.2d 1293, 1299 (Wyo. 1995).

Harper asserts that Gulf provided Harper false information that he was excluded from coverage in this matter. Harper's expert asserts that Gulf failed to exercise reasonable care in relating this information to Harper. Harper relied on this information and based upon this reliance a $1,516,000 judgment was entered against him. Had he

known that the denial of a defense and coverage were not properly based on Wyoming law, the underlying litigation would have been handled much differently. Harper asserts that he has presented evidence to support the claim and summary judgment should be denied.

Harper's argument is misplaced. Since this Court has already found that Harper did not have coverage for this claim and that Gulf did not have a duty to defend Harper, Harper's negligent misrepresentation claim fails on the first element. Gulf did not provide false information in the course of one's business for the guidance of others in their business, because as a matter of law, Gulf did not provide false information. In its denial letter, Gulf informed Harper that this claim was not covered and it did not have a duty to defend based on several exclusions, including the Abuse or Molestation Exclusion. Although this Court did not rule on the other exclusions, it determined, as a matter of law, that the Abuse or Molestation Exclusion applied. Thus, Gulf is entitled to summary judgment as a matter of law.

## IV. Punitive Damages

To prove punitive damages, an insured must prove that the insurer acted with "something more" than bad faith: his culpability must rise to the level of willful and wanton misconduct. *Hutchinson Oil Co. v. Federated Serv. Ins. Co.*, 851 F. Supp. 1546, 1557 (D. Wyo. 1994). An insurer must intentionally breach his duty of good faith

and in addition must also be guilty of oppression, fraud or malice.  *Id.*   Additionally, punitive damages are appropriate when there is:

> an intent to do an act, or an intent to not do an act, in reckless disregard of the consequences, and under such circumstances and conditions that a reasonable [person] would know, or have reason to know, that such conduct would, in a high degree of probability, result in substantial harm to another.

*Farmers Ins. Exch. v. Shirley*, 958 P.2d 1040, 1051-52 (Wyo. 1998).

The Court need not reiterate its findings with regard to the Bad Faith Claim; however those findings are certainly applicable to this claim.  Since this Court has already found that there is no evidence to support a finding of bad faith, it certainly cannot comport with logic and say that Harper has shown "something more" than bad faith.  Additionally, Harper has presented no evidence that Gulf or any of its employees "intentionally breached" its duties to Harper or that Gulf breached any duties for that matter.  This Court has found that Harper was not entitled to coverage, thus, Gulf had no duty to defend.  Since no duty has been breached, Harper, as a matter of law, may not bring a punitive damage claim.  Thus, summary judgment is appropriate.

Brett Chappell merits sympathy because of the grievous situation in which he was placed and the conduct to which he was subjected.  However, this Court cannot stretch the rules of law to grant him the relief requested by Harper on his behalf.  The parties presented no material issues of fact, and the plain language of the policy shows that Gulf is entitled to judgment as a matter of law.

It is hereby

ORDERED that defendant's motion for summary judgment regarding the breach of contract claim is **GRANTED**.

ORDERED that defendant's motion for summary judgment regarding the bad faith claim is **GRANTED**.

ORDERED that defendant's motion for summary judgment regarding the negligent misrepresentation claim is **GRANTED**.

ORDERED that defendant's motion for summary judgment regarding the punitive damages claim is **GRANTED**.

ORDERED that plaintiff's motion for partial summary judgment is **DENIED**.

Dated this _22_ day of November, 2002.

ENTERED
DOCKET
November 25, 2002
Clerk
by _____
Deputy Clerk

_Alan B Johnson_
ALAN B. JOHNSON, U.S. DISTRICT JUDGE

35

IN THE DISTRICT COURT

FOR THE SIXTH JUDICIAL DISTRICT

COUNTY OF CAMPBELL, STATE OF WYOMING

USAA PROPERTY AND CASUALTY )
INSURANCE, )
　　　　　　　　　　　　　　　　　　 )
　　　　　Plaintiff, )
　　　　　　　　　　　　　　　　　　 )
vs. )　　　Civil No. 22262
　　　　　　　　　　　　　　　　　　 )
BETH GRISWOLD, )
　　　　　　　　　　　　　　　　　　 )
　　　　　Defendant. )

FILED NO. ____
CIVIL☐ PROBATE☐ CRIMINAL☐
W.C.☐ ADOPT☐ DEL☐

FEB 02 2000

CLERK OF DISTRICT COURT

## ORDER GRANTING SUMMARY JUDGMENT
## AND DECLARATORY RELIEF

THIS MATTER came before the Court for oral argument at 8:15 a.m. on January 25, 2000 at the Campbell County Courthouse in Gillette, Wyoming on plaintiff USAA Property and Casualty Insurance Company's ("USAA") motion for summary judgment on its Petition for Declaratory Judgment. Patrick Murphy represented plaintiff USAA. Thomas Zollinger represented defendant Beth Griswold. The Court had read, and considered, all the materials in the Court file prior to oral arguments. After hearing and considered the parties' oral arguments, the Court FINDS as follows:

A.　　There is no genuine issue of material fact and plaintiff USAA is entitled to judgment, and declaratory relief, as a matter of law.

B.　　Plaintiff USAA issued homeowner's insurance policies to its named insureds, Homer Griswold and Beth Griswold, for the successive periods of April 9, 1995 - April 9, 1996, April 9, 1996 - April 9, 1997, and April 9, 1997 - April 9, 1998.

C.　　In 1998, two minor children filed an underlying suit against Homer Griswold and Beth Griswold alleging injury and damage from sexual abuse inflicted upon them by Homer Griswold during two of the USAA policy periods.

D.　　In that underlying suit, the minor children allege that Beth Griswold

negligently failed to protect the minor children from her predatory husband.

E.    USAA denied any applicable coverage, or a defense, to Homer Griswold, but USAA has been providing a defense to Beth Griswold pursuant to a reservation of its right to declaim coverage, and withdraw its defense, should this Court find that no coverage or defense are owed to Beth Griswold under any of the USAA policies.

F.    Homer Griswold is an insured under these USAA homeowner's policies. Beth Griswold is also an insured under these USAA homeowner's policies. Beth Griswold is also what the courts describe as an "innocent co-insured" in these circumstances.

G.    The USAA homeowner's policies each contain the following insuring clause:

> If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury or property damage** caused by an **occurrence** to which this coverage applies, we will:
>
> 1.    pay up to our limit of liability for the damages for which the insured is legally liable; and
>
> 2.    provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent . . . .

H.    The USAA homeowner's policies each define the word "occurrence." According to those policies,

> "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions which results, during the policy period, in **bodily injury.**

I.    The USAA homeowner's policies each contain the following intentional acts exclusion:

> Coverage E - Personal Liability does not apply to bodily injury or property damage
>
> a.    caused by the intentional or purposeful acts of any insured,

2

including conduct that would
reasonably be expected to result
in bodily injury to any person.

J.   Beth Griswold contends that the minor children's allegation that she
     negligently failed to prevent her husband's sexual abuse constitutes an
     "occurrence." Beth Griswold also contends that USAA has a duty to
     defend those negligence allegations.

K.   This Court disagrees with Beth Griswold. It is clear that the minors'
     underlying lawsuit arises out of the intentional and purposeful sexual
     abuse inflicted on both minor children by Homer Griswold. Sexual abuse
     is not accidental, thus there is no "occurrence," as defined in the policies.
     It is equally clear that the underlying allegations of negligence are a
     transparent attempt to trigger insurance coverage for what is really
     intentional and purposeful conduct.

L.   Even if some of the factual allegations in the underlying lawsuit could
     somehow be interpreted to constitute an "occurrence," the USAA
     intentional acts exclusion precludes any coverage for the innocent co-
     insured, Beth Griswold. The USAA exclusion precludes coverage for
     bodily injury caused by the intentional or purposeful acts of "any
     insured." These words are unambiguous. No reasonable insured could
     expect that he or she had contracted to be covered for damage an insured
     causes when another insured molests a child. *Caroff v. Farmers Ins. Co.
     of Washington*, 989 P.2d 1233, 1237 (Wash. App. Civ. 1 1999).

M.   The presence of a severability of interests clause in these USAA policies
     does not alter the intentional acts exclusion, nor does it make it
     ambiguous. The "purpose of severability clauses is to spread protection,
     to the limits of coverage, among all of the . . . insureds. The purpose is
     not to negate bargained-for exclusions which are plainly worded."
     *Northwest G.F. Mut. Ins. Co. v. Norgard*, 518 N.W.2d 179, 183 (N.D.
     1994) (quoting *National Ins. Underwriters v. Lexington Flying Club*, 603

3

S.W.2d 490, 492 (Ky. App. 1979)).  The severability clauses in these policies do not create an ambiguity in, or negate, the intentional act exclusion at issue here.

N.  While it is often said that the duty to defend is broader than the duty to indemnify, where there is clearly no applicable coverage for the underlying allegations, there is no duty to defend those allegations.  *See, Continental Ins. Co. v. First Wyo. Bank*, 860 P.2d 1064 (Wyo. 1993) (finding no coverage and no duty to defend) and *Reisig v. Union Ins. Co.*, 870 P.2d 1066 (Wyo. 1994) (finding no coverage and no duty to defend). USAA has no duty to provide a defense to Beth Griswold for any of the allegations in the minors' underlying lawsuit.

IT IS **THEREFORE** ORDERED that plaintiff USAA's motion for summary judgment be, and hereby is, GRANTED; and

IT IS FURTHER ORDERED that plaintiff USAA's Petition For Declaratory Relief be, and hereby is, GRANTED; and

IT IS FURTHER ORDERED that plaintiff USAA does not provide any applicable coverage to Beth Griswold, under any of its homeowner's policies, for any of the allegations in the underlying lawsuit (Civil No. 22218) filed by minor children T.M. and A.O.; and

IT IS FURTHER ORDERED that plaintiff USAA has no duty, or obligation, to defend Beth Griswold, under any of its homeowner's policies, on any of the allegations in the underlying lawsuit (Civil No. 22218) filed by minor children T.M. and A.O.; and

IT IS FURTHER ORDERED that plaintiff USAA is hereby allowed to withdraw its legal defense of Beth Griswold in Civil No. 22218, and that USAA has no further obligation to Beth Griswold arising from the underlying lawsuit (Civil No. 22218).

4

DATED this ___1___ day of ___FEB___, 2000.

BY THE COURT:

**TERRENCE L. O'BRIEN**

District Judge

APPROVAL AS TO FORM:

Thomas T. Zollinger,
Attorney for Defendant Beth Griswold

Patrick J. Murphy,
Attorney for Plaintiff USAA Property
And Casualty Insurance Company

STATE OF WYOMING } s.s.
Campbell County }
NANCY RATCLIFF, Clerk of the Court, within and
for said county and state aforesaid, does hereby
certify the foregoing to be a full, true and complete
copy as the same appears on file and of record in this
office
IN TESTIMONY WHEREOF, I have hereunto
subscribed my hand and affixed the official seal of
said Court, at my office in Gillette, Wyoming, this
date,

NANCY RATCLIFF

2-8-2000
Clerk of the Court, Sixth Judicial District

5